51 So.2d 355

**KNOWLES v. CANANT.**

6 Div. 925.

Supreme Court of Alabama.

March 22, 1951.

S. P. Keith, Jr.,of Birmingham, for appellant.

Harris Burns, of Birmingham, for appellee.

LIVINGSTON, Chief Justice.

The original bill in this cause was filed by Clyde S. Knowles, as guardian for Laura Jean Knowles, a minor, against Mary M. Canant. In essence it was a bill to sell lands for a division of the proceeds of sale among alleged joint owners. The bill alleges that Laura Jean Knowles and Mary M. Canant each own an undivided one-half interest in the following described lands: "Lot 9 in Block 55 according to the survey of Birmingham-Ensley as recorded in Map Book 1, page 245, in the office of the Judge of Probate of Jefferson County, Alabama, situated in the City of Birmingham, Alabama, said property being otherwise described as house and premises located at 2801 29th Place, West, in the City of Birmingham, Jefferson County, Alabama."

No question is presented on this appeal as to the sufficiency of the original bill.

The respondent, Mary M. Canant, answered the bill and made her answer a cross-bill. The sufficiency of the cross-bill and certain aspects of it as tested by demurrer; the final decree of the court below, and the overruling of appellant's motion for a rehearing are the only questions presented for review.

The answer and cross-bill of Mary M. Canant alleges, in substance, the following facts. That she, Mary M. Canant, is now about eighty-five years of age and in failing health; that Laura Jean Knowles is her grandchild and is about fifteen years of age: that Laura Jean Knowles is the daughter of J. L. Knowles and the sister of Clyde S. Knowles, her guardian: that about August 1940, she, Mary M. Canant, offered to buy the property here involved from the Home Owners Loan Corporation for the sum of $2500.00: that she was unfamiliar with real estate transactions of the kind involved, and that J. L. Knowles, her son-in-law and Clyde S. Knowles, her grandson, offered to handle the transaction for her and to attend to the details of closing the trade: that she gave to them the sum of $250.00 to make the down payment to the Home Owners Loan Corporation for the property to be deeded to her, and that instead of having the deed made to her, the said J. L. Knowles and Clyde S. Knowles, with the intent to defraud her, took the deed in their own names, and executed to the Home Owners Loan Corporation a purchase money mortgage for $2250.-00: that several weeks later when the deed from the Home Owners Loan Corporation

had been recorded it was sent to her and she discovered that the property had not been deeded to her, but, instead had been deeded to J. L. Knowles and Clyde S. Knowles: that she immediately told J. L. Knowles and Clyde S. Knowles that the property must be deeded to her: that on February 14, 1941, J. L. Knowles and Clyde S. Knowles executed and recorded a deed conveying the property involved to her, Mary M. Canant, and Laura Jean Knowles jointly: that Laura Jean Knowles was named in the deed without her knowledge or consent, and that Laura Jean Knowles paid no consideration whatever for any interest in said property, but that she was named grantee in said deed through the fraud and deception of J. L. Knowles and Clyde S. Knowles: that she, Mary M. Canant, has made all payments made on the mortgage executed by J. L. Knowles and Clyde S. Knowles to the Home Owners Loan Corporation, and that the balance now due on said mortgage is about $1200.-00.

In so far as the questions presented on this appeal are concerned the cross-bill prays that the court will decree that the lands involved are impressed with a constructive trust in favor of cross-complainant, Mary M. Canant: that Laura Jean Knowles has no right, title or interest therein: that cross-complainant, Mary M. Canant, is the owner of said land in its entirety: and that the court will, if necessary, order the Register of the court to execute a deed conveying to cross-complainant all the right, title or interest in said real estate which may have been conveyed to Laura Jean Knowles.

Appellant's assignments of error from 1 to 4, inclusive, are based on the theory that the allegations of the cross-bill are not sufficient to show the existence of a constructive trust, and that as a consequence, the trial court erred in its decree overruling appellant's demurrer thereto.

■ A constructive trust, or, as it frequently is called, a trust *ex maleficio* or *ex delicto,* arises, as Mr. Pomeroy says, "Whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentation, concealments,

or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never perhaps have had any legal estate therein; and a court of equity has jurisdiction to reach the property in the hands of the original wrong-doer or in the hands of a subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved of the trust." 2 Pom.Eq. §§ 1053, 1055; 1 Story eq. Juris. § 187; Manning v. Pippen, 86 Ala. 357, 5 So. 572; Moore v. Crawford, 130 U.S. 122, 9 S.Ct. 447, 32 L.Ed. 878.

The foregoing was again quoted approvingly in Edmondson v. Jones, 204 Ala. 133, 85 So. 799, and again in Bevels v. Hall, 246 Ala. 430, 21 So.2d 325, see also, Sanford v. Hamner, 115 Ala. 406, 22 So. 117; Butler v. Watrous, 185 Ala. 130, 64 So. 346.

■ It is clear enough that the averments of the cross-bill bring it within the application of the foregoing principles, and that J. L. Knowles and Clyde S. Knowles acquired and held the legal title to the house and lot purchased from the Home Owners Loan Corporation as constructive trustees for Mrs. Canant.

But it is argued that Laura Jean Knowles was not a party to that transaction, and had no knowledge of any unfair dealings on the part of J. L. Knowles and Clyde S. Knowles. But the cross-bill alleges, and the proof conclusively shows, that the deed to Laura Jean was without consideration— a deed of gift.

■ There is another fundamental principle of great practical application in all those fields of law involving fiduciary relationships that equity will pursue property that is wrongfully converted by a fiduciary, or otherwise compel restitution to the beneficiary. As stated in 54 Am.Jur. § 248, pp. 190-191:

334

"The rule is actually one of trusts, since the wrongful conversion gives rise to a constructive trust which pursues the property, its product, or proceeds in accordance with the rule. Hence, the rule well may be called 'the trust pursuit rule' or 'the rule of trust pursuit'. Under the rule a trust will follow property through all changes in its state and form, so long as such property, its product, or its proceeds are capable of identification. It will follow the property into the hands of a transferee other than a bona fide purchaser for value, or restitution will be enforced, at the election of a beneficiary, through recourse against the trustee or the transferee personally, or through compelling the transferee to perform the trust, except in so far as the transferee is protected as a bona fide purchaser for value. The trust pursuit rule applies where a constructive or a resulting trust, as well as where an express trust, has once affixed itself to property in a certain state or form.

"This rule of trust pursuit has been recognized and applied in courts of equity from a very early period. It has been grounded on the principle of property that ownership continues and can be asserted by the true owner as against any withholding of the object to which the ownership pertains, whether such object of ownership is found in the hands of an original holder or a transferee, or in a different form, so long as it can be identified. It has been observed that the rule is not to be grounded on the theory of a debt due and owing, or on the ground of compensation for loss of property. The rule and the necessity to apply it in proper cases are not affected or diminished by a statute providing that a resulting trust arises when a deed is made to one person on a consideration from another, or by a statute providing for a remedy by attachment or garnishment."

■ It can make no difference that Laura Jean did not know of the true relationship existing between J. L. Knowles, Clyde S. Knowles and Mrs. Canant. She was not a bona fide purchaser and cannot invoke protection as such.

It is also argued that the cross-bill shows on its face that the cause of action stated therein is barred by the statute of limitations of 1, 2, 3, 4, 5 and 6 years, and by laches. The cross-bill indicates that Mrs. Canant has been in possession of the property at all times since it was purchased from Home Owners Loan Corporation. But the point is unimportant here.

■ Our cases are clear to the effect that in a suit of this kind, the statute of limitations is ten years as in the nature of a suit for the recovery of land since land is the subject matter of the suit. McCoy v. Gentry, 73 Ala. 105; Miles v. Rhodes, 222 Ala. 208, 131 So. 633; Van Antwerp v. Van Antwerp, 242 Ala. 92, 5 So.2d 73; Woods v. Sanders, 247 Ala. 492, 25 So.2d 141. The cross-bill was filed within ten years after the cause of action stated therein accrued. It is also well understood that where a cross-bill is filed within the statutory period it is not subject to demurrer for laches unless the cross-bill shows the facts which constitute laches. Woodlawn Realty & Development Co. v. Hawkins, 186 Ala. 234, 65 So. 183; Phoenix Chair Co. v. Daniel, 228 Ala. 579, 581, 155 So. 363; Woods v. Sanders, supra.

■■ The question of laches was fully discussed in Dunn v. Ponceler, 235 Ala. 269, 178 So. 40, 46, where it was said that "what will be regarded as a sufficient excuse depends upon the circumstance of the case". In other words, each case must be determined upon its particular facts and circumstances. We are clear to the conclusion that Mrs. Canant was not guilty of laches under all the circumstance disclosed by her cross-bill.

The cross-bill was not subject to any of the grounds of demurrer the overruling of which is assigned as error.

■ The cause was submitted in the court below on evidence taken *ore tenus* and the usual presumption prevails.

The evidence was in conflict, no good purpose could possibly be served to here set out and comment on its conflicting tendencies. Suffice it to say, that we have carefully examined the evidence and are not convinced at all that the decree of the trial court was palpably wrong.

Nothing not already covered in the foregoing opinion was presented in the motion for a rehearing.

There is no error in the record and the cause is affirmed.

Affirmed.

BROWN, SIMPSON and STAKELY, JJ., concur.